CLOSED

**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JUDAH HAITZACKY, Petitioner, v. IMMIGRATION AND NATURALIZATION SERVICE, et al., Respondents. | Civil No. 06-4828 (SRC) **O P I N I O N** |

**APPEARANCES:**

JUDAH HAITZACKY,
Petitioner pro se,
Passaic County Jail
Paterson, NJ 07501

CHRISTOPHER J. CHRISTIE,
U.S. Attorney,
NEIL RODGERS GALLAGHER,
Assistant U.S. Attorney,
United States Attorney's Office
Newark, New Jersey 07102
Attorney for Respondents

**Stanley R. Chesler, District Judge**

Petitioner Judah Haitzacky (hereinafter "Petitioner"), being currently detained at Bergen County Jail, Hackensack, New Jersey, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (hereinafter "Petition"). Having thoroughly reviewed Petitioner's Petition and the attached exhibits, the Court denies Petitioner's request for a Writ of Habeas Corpus.

## FACTUAL BACKGROUND and PROCEDURAL HISTORY

### I. Petitioner's Previous § 2241 Application

Petitioner first § 2241 application was filed with the Court on October 28, 2005. See Haitzacky v. DHS, 05-5159 (KSH) (hereinafter "Haitzacky I"), Docket Entry No. 1. In his first § 2241 petition, Petitioner, a native and citizen of Israel, indicated that he was arrested on July 12, 2005. See Haitzacky I, Aff. in Supp. of Habeas Corpus ¶¶ 6-7. Upon his arrest, Petitioner was presented with a Notice to Appear (hereinafter "NTA") that charged Petitioner with being removable from the United States as "[a]n alien present in the United States without being admitted or paroled . . . ." pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). See id. ¶ 8 and Ex. A.

During the following Petitioner's hearing before an Immigration Judge (hereinafter "IJ"), a letter issued by Israel Police, Intelligence Division, Special Operations Department, Interpol Unit, on March 2, 2005 (hereinafter "Letter"), was produced providing: (1) alternative grounds for an arrest warrant for Petitioner; and (2) a clarification that Petitioner was wanted in Israel as a felon who fled from the Israeli justice after being convicted for assaulting his spouse, abusing a minor, and for

witness tampering.[1] See id. ¶10-11 and Ex. C. The Letter was concluded by the statement that, "[i]f [Petitioner] were to be arrested in the U.S., [Israel] would be pleased if he were departed to Israel so that he could be made to serve the sentence he was given after his conviction." Id. Ex. C. At the conclusion of the immigration hearing, Petitioner was offered to depart voluntarily, and his request to be released on bail was denied. See id. ¶¶ 18-20.

Although Petitioner allegedly chose to depart voluntarily, he stayed in the United States and filed an appeal of his deportation with the Board of Immigration Appeals (hereinafter "BIA"), the action which protracted this first round of removal proceedings.[2] See id. ¶ 20. In addition, Petitioner filed his first Habeas Corpus Petition with the Court asserting that the decision to detain Petitioner without releasing him on bail was unconstitutional. See id. Mem. ¶¶ 4, 12. However, on March 10, 2006, Petitioner filed with the Court an application reading "I'm writing to request [this Court to] cancel . . . the above action.

---

1 Petitioner admitted that he was convicted of these crimes. He justified his flight from the Israeli justice by claiming that: (1) "the case [in Israel] was commenced [on] bogus charges [brought] by [Petitioner's] ex-girlfriend harboring malicious feelings"; and (2) Petitioner had to flee Israel in order to save his son's life because "Petitioner was [falsely] accused of [inter alia,] abusing his . . . son [who] was planning to commit suicide if [Petitioner was to be] sent to prison." See id. ¶¶ 13-15.

2 The BIA dismissed Petitioner's appeal on November 28, 2005.

My . . . order of deportation [became] final [and there] is also pending [with] the [Second] Circuit [is] my motion to stay . . . deportation." See Haitzacky I, Docket Entry No. 5. On March 15, 2006, the Court, responding to Petitioner's request, dismissed Petitioner's first petition and closed the matter. See id., Docket Entry No. 6.

## II. Petitioner's Instant § 2241 Application

On March 22, 2006, one week after the Court dismissed Petitioner's first petition, Petitioner filed his instant Petition (hereinafter "Petition"). See Transfer Docket, Docket Entry No. 1-3, item 1. On April 4, 2006, the Petition was transferred to the United States Court of Appeals for the Second Circuit and merged with Petitioner's already pending application. See id., item 2.

On December 22, 2006, the Court of Appeals for the Second Circuit vacated the BIA's decision and the underlying IJ's determination and remanded to matter to the IJ for the purposes of determining Petitioner's removability, hence (1) starting the second round of Petitioner's removal proceedings, and (2) returning the instant Petition to this Court. See Ans., Ex. A. Consequently, the Department of Homeland Security (hereinafter "DHS") made a determination to detain Petitioner and served Petitioner with a Warrant for Arrest of Alien on January 23, 2007. See id. Exs. B, C. On January 27, 2007, Petitioner's remanded

immigration matter was placed on calendar for the purposes of determination of bond. See id. Ex. D. Although Petitioner's determination of bond hearing was scheduled for February 6, 2007, the hearing was adjourned until February 20, 2007, and Petitioner remained in custody. On March 5, 2007, Petitioner filed his Amended Petition with this Court.[3]

In his Amended Petition, Petitioner contends that his custody violates the United States Constitution.[4] See Amended Petition, § 7. Specifically, Petitioner alleges that (1) his case is not governed by the holding reached by the United States Supreme Court in Demore v. Kim, 538 U.S. 510 (2003); (2) his case is governed by the holding Zadvydas v. Davis, 533 U.S. 678 (2001); and (3) since

---

[3] The record before this Court does not provide the Court with any definitive information as to whether Petitioner was eventually released from his confinement on bond. However, in view of Petitioner's Application to Amend Pleadings, dated March 5, 2007, Docket Entry No. 9 (hereinafter "Amended Petition"), seeking to add the warden of Petitioner's present place of confinement as a Respondent in this matter, this Court presumes that, as of the date of this Opinion and accompanying Order, Petitioner remains confined either due to another adjournment of his bond hearing or due to denial of Petitioner's request to be released on bond. This distinction is of no consequence to this Court's analysis.

[4] The Court addressed only the claims made by Petitioner in his Amended Petition since Petitioner's Petition fails to raise any issue that could fall within the jurisdiction of this Court. See generally, Transfer Docket, Docket Entry 1-4. Claims set forth in the Petition challenge the matters within the province of Petitioner's immigration court or the BIA, or those which are exclusively within the jurisdiction of the Court of Appeals for the Second Circuit under the REAL ID Act of 2005. See Pub. L. 109-13, Div. B, 119 Stat. 231 (May 11, 2005). See id.

Petitioner's total custody exceeded seventeen months, the sole fact of Petitioner's lengthy detention sufficiently indicates that his detention violates the precedent governing his case, that is, Zadvydas, 533 U.S. 678. See Amended Petition, §§ 7-17.

Respondents assert that Petitioner's application is without merit and should be denied. See Docket Entry No. 7.

## DISCUSSION

### I. Inapplicability of *Demore v. Kim*

Petitioner is correct in his assertion that Demore v. Kim, 538 U.S. 510, is not the proper or applicable precedent. In Demore v. Kim, the Supreme Court has upheld mandatory pre-removal-order detention of criminal aliens under 8 U.S.C. § 1226(c). See 538 U.S. at 516-17.[5] Since Petitioner is not a criminal alien, in the sense that there were no criminal convictions of Petitioner *in the United States*, the holding of Demore v. Kim, 538 U.S. 510, is not directly applicable to the case at bar.[6]

---

5 In so doing, the Court relied upon more than a century of broad precedent "recogniz[ing] detention during deportation proceedings as a constitutionally valid aspect of the deportation process." Id. at 523 (citations omitted). The Court also emphasized that pre-removal detention typically lasts only a few months and, by definition, has a finite ending point, namely, the completion of the removal proceedings. See id. at 526-531.

6 This Court, however, is not entirely clear as to why Petitioner keeps revisiting this point with vigor since Respondents never argued that Petitioner's detention is proper under the holding of Demore v. Kim, 538 U.S. 510. See generally, Ans.

## II. Inapplicability of *Zadvydas v. Davis*

Petitioner errs in his assertion that Zadvydas v. Davis, 533 U.S. 678, is the governing, or even relevant, precedent.

The "removal period" starts on the latest of the following: (1) the date when the order of removal becomes administratively final (that is, an appeal to the BIA was either taken and ruled upon or the time to appeal expired); or (2) if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order, or (3) if the alien is detained or confined (except under an immigration process), the date the alien is released from confinement. See 8 U.S.C. § 1231(a)(1)(B). Moreover, each of these three events starts the removal period anew. See 8 U.S.C. § 1231(a)(1)(B)(iii).

> [There cannot] be only one removal period[:] . . . that is the only rational reading of the statute. . . . [T]he statute provides that the removal period begins on the latest of several dates. The passing of one date does not stop the operation of the statute. In a sense, the only way to apply the statute to a given situation is retrospectively. That is, the removal period begins when the removal order becomes final. If a court issues a stay [or a new detention unrelated to removal proceedings takes place], the removal period begins [anew] when the stay is lifted [or when such new detention ends]. Therefore, the only way to determine when the removal period begins, or began, is to look at what events already have occurred. If there is another potential event, there is another potential beginning date for the removal period. The only sensible reading of this provision is that [DHS/ICE] is required to effectuate the removal within 90 days of certain events, but will have another 90 days if another one of the designated events occurs at a later date. The obvious reason for this is that [DHS/ICE]'s authority to effect the removal is suspended due to the occurrence of the later event (such

> as a stay order [or a new detention on criminal charges]).

Joseph v. Chertoff, 2006 U.S. Dist. LEXIS 44817, at *10, 11 (D.N.J. June 19, 2006) (quoting Michel v. INS, 119 F. Supp. 2d 485, 498 (M.D. Pa. 2000)) (emphasis removed); accord Morena v. Gonzales, 2005 U.S. Dist. LEXIS 37989, at *18 (M.D. Pa. Oct. 4, 2005); Atkinson v. INS, 2002 U.S. Dist. LEXIS 11335, at *5 (E.D. Pa. June 25, 2002); Marcelus v. INS, 2002 U.S. Dist. LEXIS 795, at *6 (E.D. Pa. Jan. 16, 2002); Dunbar v. Holmes, 2000 U.S. Dist. LEXIS 17048, at *6-7 (E.D. Pa. Nov. 28, 2000).

If one of the triggering events listed in 8 U.S.C. § 1231(a)(1)(B) took place and "a" removal period began to run, Section 1231(a)(1)(A) provides that the government has just 90 days to remove the alien from the United States. Detention during this 90-day removal period under Section 1231(a)(1)(A) is *mandatory* and, in addition, § 1231(a)(1)(C) provides that the removal period shall be extended, and the alien may remain in detention during such extended period, if the alien "acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).

While, during the 90-day "removal period," the alien must be detained, see id. § 1231(a)(2), the government may detain the alien or release him after the removal period subject to conditions of release. See id. § 1231(a)(6). In Zadvydas, the Supreme Court held that aliens may be detained under § 1231(a)(6) only for "a

period reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689 (holding that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States [and] does not permit indefinite detention") (emphasis supplied).

Recognizing that its holding would lead to difficult judgment calls in the courts, the Supreme Court, "for the sake of uniform administration in the federal courts" recognized a six-month "presumptively reasonable period of detention." Id. at 700-01. Furthermore, the Supreme Court clarified that,

> [a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

533 U.S. at 701.

In the case at bar, Petitioner' 90-day removal period *never began to run* since the triggering event never took place: Petitioner's applications to the BIA and than to the Court of Appeals for the Second Circuit have continuously prevented

Petitioner's order of removal from becoming final. See 8 U.S.C. § 1231(a)(1)(B). Moreover, the remand of Petitioner's immigration matter by the Second Circuit to the IJ started Petitioner's removal proceedings *anew*, thus rendering the finalization of Petitioner's order of removal an uncertain event in the future. Since Petitioner's order of removal is in no event final, Petitioner's Zadvydas presumptive post-removal-order period could not begin to run and will not begin to run until Petitioner's order of removal becomes final within the meaning of 8 U.S.C. § 1231(a)(1)(B). Moreover, even if and when Petitioner's Zadvydas presumptive post-removal-order period begins to run, Petitioner would not be let out of confinement automatically upon expiration of six months. See Fahim v. Ashcroft, 227 F. Supp. 2d 1359, 1365-68 (N.D. Ga. 2002) (mere passage of time is insufficient to meet alien's burden of proof); accord Zadvydas, 533 U.S. at 701. Petitioner would have to provide "good reason to believe that there is no significant likelihood of [Petitioner's' removal in the reasonably foreseeable future" to Israel. Zadvydas, 533 U.S. at 701; see also Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002) ("[I]n order to state a claim under Zadvydas, the alien not only must show post-removal-order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future"); accord Nma v. Ridge, 286 F. Supp. 2d 469, 474 (E.D. Pa.

2003) (same). In other words, Petitioner would have the burden of showing that the United States cannot arrange for Israel to accept Petitioner in the event Petitioner is removed to Israel.[7]

Consequently, at the instant juncture, Petitioner's reliance on Zadvydas v. Davis, 533 U.S. 678 is wholly misplaced.

**III. Petitioner's Current Detention Is Proper**

Even though Petitioner is not a criminal alien within the meaning of Demore v. Kim, Petitioner's current pre-removal-order detention is valid under 8 U.S.C. § 1226(a). If one is adjudicated "non-criminal alien[], . . . the Attorney General retains discretion to decide whether [such alien] should be detained" while this alien is awaiting conclusion of his removal proceedings. See Patel v. Zemski, 275 F.3d 299, 305 (3d Cir. 2001), overruled on other grounds, Demore v. Kim, 538 U.S. 510; see also Carlson v. Landon, 342 U.S. 524, 528 n.5 (1952).

The plain language of 8 U.S.C. §1226(a) expressly allows for

---

7

In view of Israel's request to have Petitioner removed to Israel in order to incarcerate Petitioner in Israel under his Israeli criminal conviction, it appears unlikely that Petitioner's case could become subject to the Zadvydas rule, even if Petitioner's post-removal-order period begins to run. However, no statement made in the instant Opinion should be interpreted as an indication that Petitioner is precluded from filing another § 2241 petition in the future if (1) Petitioner's post-removal-order period begins to run *and* exceeds six months, *plus* (2) Petitioner develops a good reason to believe that there is no significant likelihood of Petitioner's removal to Israel in the reasonably foreseeable future.

Petitioner's detention since, upon "a warrant issued . . . , an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. §1226(a). While "[e]ach detained alien is entitled to . . . a bond hearing at which an IJ determines whether [the mandatory detention] applies, [if one is adjudicated] non-criminal alien[], . . . the Attorney General retains discretion to decide whether [such alien] should be detained" while this alien is awaiting conclusion of his removal proceedings. See Patel, 275 F.3d at 305. Like the mandatory pre-removal-order period found constitutional in Demore, the discretionary power of the Attorney General provided for by 8 U.S.C. §1226(a) has only one temporal limitation, namely, the conclusion of removal proceedings.[8] See id. Therefore, Petitioner's current detention is valid under 8 U.S.C. §1226(a), as interpreted in Patel, 275 F.3d at 305, the governing precedent.

---

[8] For the reasons not entirely clear to this Court, the bulk of Respondent's answer is dedicated to the argument that judicial review of an administrative bond decision is inappropriate, see Ans. at 6-9, even though Petitioner's submissions do not appear to make an argument to the contrary. Consequently, this Court, while noting that Respondents' observations to that effect are correct, does not address this matter in the instant Opinion.

**CONCLUSION**

The Court concludes that Petitioner's being in custody does not violate of the laws of the United States and denies his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.

An appropriate Order accompanies this Opinion.

**STANLEY R. CHESLER**
**United States District Judge**

Dated: 3/14/07